Noe Salvador Perez Vasquez
Appellant, pro se
Reg. #99445-038
USP Terre Haute
PO Box 33
Terre Haute, IN 47808

RECEIVED FOR FILING
IN CLERK'S OFFICE

2024 JUL -8 P 1: 11

US COURT OF APPEALS
FOR THE FIRST CIRCUIT

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | |
|---|---|
| NOE SALVADOR PEREZ VASQUEZ,<br>Appellant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Appellee. | Appeal No. 23-2068<br>Civil Case No. 1:22-cv-11469-FDS<br><br>APPELLANT'S BRIEF |

On Appeal From the United States District Court
For the District of Massachusetts
United States District Judge Dennis Saylor IV
Lead Criminal Case No. 15-10338-FDS

---

COMES NOW, Noe Salvador Perez Vasquez (Mr. Vasquez), the Appellant in this matter, pro se, and does hereby submit this Appellant's Brief. This Brief has a filing deadline of June 28, 2024, and was placed in the mail on June 25, 2024. It is therefore timely filed.

## I. OVERVIEW

On April 23, 2018, Mr. Vasquez was found guilty by a jury of 18 USC §1962(d) (Conspiracy to conduct enterprise affairs through a pattern of racketeering activity, with a special finding of responsibility for two (2) murders) (Under 18 USC §3593(d) as to [3592])(Count II); 21 USC §846 (Conspiracy to possess cocaine with intent to distribute)(Ct. III); and 21 USC §846 (Conspiracy to possess marijuana with intent to distribute)(Ct. XI).

Mr. Vasquez was ultimately sentenced to concurrent terms of LIFE on Cts. II & III, and five (5) years on Ct. XI. His direct appeal, which included reference to

the conduct of attorney O'Hara which also constitutes the basis of the 28 USC §2255 motion, resulted in the conviction being affirmed.

On September 12, 2022, Mr. Vasquez filed a motion under §2255. He also filed a motion to expand the record (Doc. 3325), with an accompanying unsworn declaration under 28 USC §1746 on May 1, 2023, as well as a motion to hold an evidentiary hearing (Doc. 3327) supported by Doc. 3325 on May 8, 2023.

However inelegant the pleading, the substantive premise of Mr. Vasquez's §2255 motion was one of structural error. His defense attorney, Mr. O'Hara, usurped Mr. Vasquez's prerogative to identify the sole objective of his defense thus implicating McCoy v Louisiana, 138 S.Ct. 1500 (2018). Mr. Vasquez's sole objective was to maintain innocence and pursue an acquittal; however miniscule a chance of not being convicted and sentenced to life in prison.

Mr. Vasquez was not afforded a plea and a life sentence was a foregone conclusion absent an acquittal. To take any other course of action that isn't designed or intended to produce an acquittal as a defense is both absurd and incongruous with the sole objective.

Attorney O'Haha conceded Mr. Vasquez's guilt with concessions of elements of the §1962(d) offense. In a RICO conspiracy case, conceding elements of the offense IS conceding guilt. It is difficult to understand any other interpretation.

In its opposition (Doc. 3302), the government intentionally misconstrued Mr. Vasquez's §2255 McCoy claim and converted it to a Strickland v Washington, 466 U.S. 668 (1984) claim. The court adopted the government's position for the purposes of analyzing the instant motion. The government did not secure or present an affidavit from former counsel O'Hara. And, despite the fact that Mr. Vasquez's unsworn declaration was the only evidence on the record concerning the fact that attorney O'Hara overrode Mr. Vasquez's autonomy without, inter alia, permission to do so, all three motions filed by Mr. Vasquez were denied.

The district court erred in concluding that McCoy is not controlling. It was

further error to decide an issue that was not able to be resolved on the face of the trial record. At the very least an evidentiary hearing was required to address Mr. Vasquez's unsworn declaration in light of an absence of refuting evidence.

## II. LEGAL STANDARDS

Pursuant to 28 USC §2253, Mr. Vasquez cannot simply appeal the district court's denial of his §2255 motion, or derivative motions filed, under the Rules Governing Section 2255 Proceedings. Instead, he must either be granted a COA by the district court, or seek one from a circuit justice directly. See §2253 Appeal (a): In a Habeas Corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. [See subsection (c)(1)] Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from [see subsection (c)(1)(B)] the final order in a proceeding in a section 2255 [see subsection (c)(2)] a [COA] may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

If a district court has rejected the original petition on the merits, the petitioner must demonstrate that reasonable jurist would find the district court's assessment of the constitutional claims is debatable or wrong. Ormsby v Maine, 2022 U.S. App. LEXIS 37203 (1st Cir.) This is the straight forward definition of what constitutes a "substantial showing of the denial of a constitutional right." See also Slack v McDaniel, 529 U.S. 473 (2000). The District Court issued a COA on 4-1-24.

## III. ARGUMENTS

Mr. Vasquez's burden at this point rests on demonstrating two (2) things: 1) did he make a "substantial showing of the denial of a constitutional right?"; and to do so 2) can he "demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong"?

The constitutional right Mr. Vasquez was denied was the assistance of counsel,

(3)

or more accurately, "effective representation." At a minimum, the U.S. Constitution's Sixth Amendment surely protects a defendant from an attorney conceding an element of the charged offense to a petit júry that ipso facto renders a finding of guilt. Such conduct of a legal representative necessarily runs counter to the sole objective of pursuing an acquittal; even if against all odds.

A review of the post-conviction proceedings lends to the demonstration that a reasonable jurist would find District Court Judge Dennis Saylor IV's assessment was either "debatable or wrong." What makes something "debatable or wrong"? According to the Merriam-Webster's Collegiate Dictionary, 11th Ed. (2014), something debatable is (def. 2a): open to dispute: QUESTIONABLE; (b) open to debate; and wrong is (3a): the state of being mistaken or incorrect.

Let's examine these issues a little more closely.

## A. The §2255 Claim

Mr. Vasquez was sitting in a courtroom in April 2018. He was under the clear belief that his sole objective during trial was to do everything through his attorney possible in pursuit of an acquittal. There was no plea from the government; attorney O'Hara couldn't secure one. Mr. Vasquez knew it was left only to create reasonable doubt for an acquittal on the two (2) most serious offenses. He also knew that the odds of being successful were miniscule. But when you're facing life in prison for the conduct of your co-conspirators (whom you cannot control but are ultimately responsible for) any chance is still a chance. "It is for the defendant to make the value judgement whether 'to take the miniscule chance of not being convicted and spending life in [] prison.'" Hashimoto's Resurrecting Autonomy: The Criminal Defendant's Right to Control the Case, 90 B.U.L. Rev. 1147, 1178 (2010)

For some defendants, "the possibility of an acquittal, even if remote may be more valuable than the difference between a life and death sentence." (and LIFE is a slow, drawn out death sentence); cf. Jae Lee v United States, 582 U.S. \_\_\_\_(2017)

(recognizing that a defendant might...prefer "taking a chance at trial" despite "[a]lmost certai[n]" conviction (emphasis deleted)). "When a client expressly asserts that the objective of his defense is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." U.S. Const. Amend. VI. The American Bar Association Model Rule of Professional Conduct 1.2(a) (2016) provides that a lawyer shall abide by a client's decision concerning the objectives of the representation. McCoy at Headnote 5.

During the closing arguments, attorney O'Hara unilaterally usurped Mr. Vasquez's sole objective; without conference, without consent, and without warning; Mr. Vasquez was blindsided by attorney O'Hara conceding guilty via concession of certain elements of the §1962(d) offense.

### 1. Attorney O'Hara's Conduct

"At trial, Perez Vasquez's attorney gave a 45-minute closing argument. Although he contested several elements of the charged offenses, he chose not to contest that Perez Vasquez was a member of a criminal enterprise:..." (Doc. 3344, Pg. 2 at B. Factual Background) This is the district court's lead summary of attorney O'Hara's representation of Mr. Vasquez. The summary seems to frame attorney O'Hara's usurpation of Mr. Vasquez's sole objective in terms that appear reasonable.

But what did attorney O'Hara actually concede? And before we begin, it is evident this decision to "concede elements" was not effective. But that is why the recharacterization of Mr. Vasquez's McCoy-based §2255 was vital to the government's opposition. It created an argument about ineffectiveness and resulting prejudice that was apropos of nothing in the McCoy claim. It was simply a red herring.

This is a sample of what attorney O'Hara conceded to the jury:

> "We're going to try and make your task a little bit easy for you in that we are acknowledging and we're not contesting that our client, Mr. Perez Vasquez, had a membership in a criminal enterprise, and we agree that the legal definition of a criminal enterprise is proper and fits in this case [Doc. 2691 @93-94]... he may have played a leadership role within the clique, and we also don't deny that he

(5)

had intentions of elevating himself at some time in the future to be a leader of that clique again (id@96)... [Mr. Perez Vasquez] you know what he told them? 'Well, if the dudes from down below gave the green light, you figure out what to do.' He's saying, look, if the green light came from El Salvador, you do what you want to do...And you've heard testimony that Vida Loca was a homeboy, and when a homeboy asks [for a gun][from Mr. Perez Vasquez], you don't have the option of saying no...Now, I ask you a question. Given the rules that pertain to this gang, what would have happened if Mr. Perez Vasquez had told Vida Loca to go pound sand? 'I'm not bringing the gun.' I suggest to you that [Mr. Perez Vasquez] would have been killed... you owe obedience to all your other homeboys no matter where they are and no matter what they ask for...Mr. Perez Vasquez... could either fish or cut bait... so he gave him the gun... (Id@103-104)

No reasonable jurist can read these conceded guilts and then still believe that attorney O'Hara actually believed the jury would credit statements such as: "[Mr. Vasquez] didn't know that Vida Loca was going to shoot a rival'" (id) or "We are contesting our client's involvement in two murders" (Doc. 2691 @93-94), or, most illogically to the sole objective," ...there has been no evidence produced during this trial that shows Noe Perez-Vasquez shared an intent to commit murder in this case." (id)

Attorney O'Hara then also told the jury that he was "contesting [Mr. Vasquez's] involvement in the two murders [and it] is going to be based upon the legal definition of what constitutes an actual act of malice in a murder..." (id, in Doc. 3344 @ Pg. 2)

Perhaps in a criminal prosecution against a single offender, conceding some elements and contesting others might effectuate a desired result, i.e., an acquittal. But in a RICO offense prosecution this is an absurd theory of defense.

Once you concede that Mr. Vasquez was a part of the conspiracy offense, and once you concede that he provided the murder weapon, you can't argue lack of intent or expect an acquittal. That is like hornbook law concerning RICO conspiracy offenses.

2. RICO & Conspiracy Law

Under a Pattern of Racketeering Activity (RICO Conspiracy)(18 USC §1962(d)),

it is a crime "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, insterstate or foreign commerce, 'to conspire' to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." United States v Simon, 12 F.4th (1st Cir. 2021)

The government need not "prove that the defendant himself committed or agreed to commit two or more racketeering acts." United States v Millan-Manchuca, 991 F.3d 7, 18 (1st Cir. 2020) citing Salinas v United States, 552 U.S. 52, 65 (1997) The government need prove only that "the defendant agreed that at least two acts of racketeering would be committed in furtherance of the conspiracy." id citing United States v Leoner-Aquirre, 939 F.3d at 317 (1st Cir. 2019)

"A defendant need not have 'agree[d] to commit or facilitate each and every part of the substantive offense' in order to be found guilty." Simon citing Salinas "Instead, [a]ll the government need show is that the defendant agreed to facilitate a scheme in which a conspirator would commit at least two predicate acts, if the substantive crime [had] occurred. United States v Rodrigues-Torres, 939 F.3d 16 (1st Cir. 2019) cited in Simon.

To prove a RICO conspiracy, "it is enough to prove that a defendant agreed with one or more others that two predicate offenses be committed." Aetra Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546 (1st Cir. 1994) in Simon. To prove a RICO conspiracy offense, "the government must prove that 'the defendant knew about and agreed to facilitate' a substantive RICO offense." Millan-Machuca @ 18 quoting Leoner-Aguirre @ 316 in United States v Andino-Morales, 73 F.4th 24 (1st Cir. 2023)

It is hornbook law that a defendant may be found guilty of participating in a drug-trafficking conspiracy without knowing the full extent of the enterprise or the identities of all the co-conspirators. See United States v Rivera-Santiago, 872 F.2d 1073 (1st Cir. 1989) in United States v Ortiz de Jesus, 230 F.3d 1, 5 (1st Cir. 2000)

You can't simply concede any element of these offenses, but then argue you didn't concede guilt. A reasonable attorney would have focused on the argument of lack of credibility as to the "testimony from the four horsemen of provocation, the four cooperating witnesses, the informants, the snitches" (Doc. 2691, Pgs. 95-96) until the very end of the trial.

### 3. The McCoy Precedent

The only issue to be considered is that the U.S. Constitution's Sixth Amendment guarantees Mr. Vasquez the right to choose the objective of his defense. It ensures that, if a defendant chooses to be represented by counsel, he retains the right to be "master" of his defense and retains the "[a]utonomy to decide...the objective of his defense." McCoy at 1508. Autonomy claims are premised on violations of a defendant's "right to make the fundamental choices about his own defense." Kellogg-Roe v Warden, NH State Prison, 2020-DNH 049 quoting McCoy at 1511.

Mr. Vasquez was not offered a plea; there was either acquittal or life in prison after trial. Mr. Vasquez and attorney O'Hara had an understanding that maintaining innocence and pursuing acquittal through the creation of reasonable doubt was the sole objective.

This was meant to include that attorney O'Hara would refrain from conceding any form of guilt; whether it be simply "the elements of the offense" or otherwise. At no time prior to closing arguments did attorney O'Hara ever tell Mr. Vasquez that he was going to change the objective of the defense. Counsel can make decisions over matters of trial management, such as "the objections to make, the witnesses to call, and the arguments to advance." id at 1508 citing Gonzalez v United States, 553 U.S. 242 (2008) But Mr. Vasquez has the "ultimate authority to make certain fundamental decisions regarding the case." id citing Barnes v Jones, 463 U.S. 745 (1983).

The latter category of decisions "are not strategic choices about how best to achieve a client's objectives; they are choices about what the client's objectives

in fact are." McCoy at 1508 See also Weaver v Massachusetts, 137 U.S. 1899 (2017) Those autonomous decisions that are reserved exclusively for Mr. Vasquez include "whether to plead guilty, waive the right to jury trial, testify in one's own behalf, take an appeal and ADMIT GUILT OF THE CHARGED CRIME" (emphasis added) in Kellogg-Roe citing McCoy at 1511.

## B. The §2255 Proceedings

With the assistance of one prisoner, Mr. Vasquez filed a timely §2255 motion to set aside his conviction for the primary reason of structural error pursuant to the Supreme Court's holding in McCoy.

Mr. Vasquez if not proficient in the nuances of the law, is not a natural-born citizen of America, and English is not his primary language. Relying on the first "jailhouse lawyer," the initial motion was written in a way that allowed the government to easily convert a McCoy claim to a Strickland claim. And the Court adopted the framework for analysis of the motion's merits.

Seeking the assistance of a second prisoner, Mr. Vasquez filed a reply (Doc. 3326), a motion to expand the record (Doc. 3325) with an unsworn declaration under 18 USC §1746 attached, and a motion for an evidentiary hearing (Doc. 3327). Regardless of the form of the pleadings, the substance was clearly a claim of autonomy and that attorney O'Hara usurped Mr. Vasquez's sole objective by making strategic choices that fundamentally undermined the goal of maintained innocence and acquittal.

Mr. Vasquez's reply did not advance new arguments or facts, so that issue is not relevant. What the reply did was make explicitly clear that the substantive merit in the instant motion was one of usurpation of the sole objective and conceding guilt. The sole objective was an acquittal. This required raising reasonable doubt, especially of the cooperating government witnesses (what actual direct physical evidence did the government possess concerning the murders that linked him to the crimes?) while maintaining innocence. This cannot be done conceding guilt, via only

"conceding elements of the offense."

Mr. Vasquez filed a perfected unsworn declaration under §1746 as it pertains to his allegations. No other evidence is on the record pertaining to any understanding of what the sole objective was. There was no affidavit from former counsel to refute these allegations of a McCoy violation; therefore, the court had nothing to consider in opposition.

Mr. Vasquez asked the Court to place the declaration on the record and moved for a necessary evidentiary hearing. The court denied Mr. Vasquez the opportunity to prove his allegations; allegations that are not refuted by the trial record or inherently incredible. These denials were in plain error.

### C. The District Court

#### 1. Summary of the Court's Reasoning

Under Section II. Legal Standard (Doc. 3344 at pg. 3), the court acknowledges that the burden of proof Mr. Vasquez must meet to receive the requested relief is only by "a preponderance of the evidence." According to the Black's Law Dictionary, this is defined as: "[t]he burden of proof in most civil trials, in which the jury is instructed to find for the party that, on the whole, has the stronger evidence, however slight the edge may be."

Under Section III. Analysis (id at pg. 5), Subsection A. Ineffective Assistance of Counsel, the court summarized the McCoy framework as Mr. Vasquez alleged to attorney O'Hara's representation. "Petitioner's reliance on McCoy is inapposite." (id at pg. 6) The court went on to reason that Mr. Vasquez's case is "very different" than the McCoy case. "Here defense counsel did not concede petitioner's guilt, but rather made a "strategic [decision] about whether to concede an element of a charged offense." (id citing McCoy at 1510) The Court concluded that because "[f]urthermore, Mr. Vasquez "did not object to his trial counsel's strategy at any point during the proceedings[,]" which means that McCoy is not controlling.

Thus, the court found that Strickland governs and that "to concede some elements of the charged RICO conspiracy" does not rise to the level of deficient performance. (Doc. 3344 at pg. 7). The court then also analyzed the prejudice-prong (despite this legally being unnecessary) and again adopted the government's position. "Because the evidence presented at trial against petitioner was overwhelming (See, e.g. Gov't's Opp., at 2-10)" there can be no resulting prejudice. (Doc. 3344 at pg. 7)

The court concluded that the motions to hold an evidentiary hearing and expand the record are denied because Mr. Vasquez did not demonstrate a "sufficient threshold showing that material facts were in doubt or dispute." (id at pg. 8) citing United States v Panitz, 907 F.2d 1267, 1273-74 (1st Cir. 1990)

Each of these summarized reasons are debatable or wrong based on the following facts and law.

## 2. Debatable or Wrong

### a. The Erroneous Conversion of a McCoy Claim Into a Strickland Analysis

As an initial observation, if the burden of proof is which party, on the whole, has the stronger evidence, then Mr. Vasquez should have prevailed on a McCoy claim. A hearing would have had to have been held because there is no evidence refuting his unsworn declaration. But because it wasn't officially placed on the record, the court didn't consider it. We must ask why? Was it to create a scenario that allowed the court to simply brush aside Mr. Vasquez's constitutional violations and enable the motion to be denied on the "merits"? It is arguable that the violation of Mr. Vasquez's constitutional rights were brushed aside for expediency.

To that end, if the Court adopted the government's premise that the evidence against Mr. Vasquez was "overwhelming" because that is believe to be accurate, wouldn't that include the evidence of intent? Why would attorney O'Hara "vigorously" defend that element in light of the other concessions then? Attorney O'Hara admitted that Mr. Vasquez provided the murder weapon; a circumstantial fact that was supported

(11)

only by the testimony of the four cooperating co-conspirators with a motive to lie. How is it reasonable to concede anything under such facts?

So, if the court is going to contemplate Strickland (and Mr. Vasquez insists this is error) wouldn't it be unreasonable for counsel to concede any element if the goal was an acquittal? If there was any merit to the theory that attorney O'Hara was arguing the evidence was weak as to intent making it unreasonable to concede some elements (as the government seems to want it both ways in its opposition), wouldn't there necessarily be prejudice demonstrated when the jury found Mr. Vasquez guilty? After all, who's to say what influenced the jury. As the Supreme Court observed in McCoy, "[ ]the effects of the admission would be immeasurable, because a jury would almost certainly be swayed by a lawyer's concession of his client's guilt."

In Simon, this court ruled that although "it would not have been unreasonable for the jury to infer that the nefarious tacit understanding the government describes existed," it "would have been equally reasonable for the jury to infer from the same evidence that no such tacit understanding existed." quoting United States v Burgos, 703 F.3d 1 (1st Cir. 2012) But because the proof "gives equal or nearly equal circumstantial support to the theory of guilt and the theory of innocence the court vacated the jury's findings...'(id)

And so it should be because of attorney O'Hara's concessions of guilt. In other words, let's suppose the evidence and arguments (sans admission of guilt as to any offense charged, elements of any offense, or special findings) might have "reasonably" produced an acquittal, then the concessions of attorney O'Hara would still require vacatur of the conviction under Strickland. On the other hand, usurping the sole objective is a McCoy violation.

In the McCoy dissent authored by Justice Alito (Section III), the following question was posed. When guilt is the sole issue for the jury, is it ever permissible for counsel to make the unilateral decision to concede an element of the offense

charged? The answer, specifically in light of Mr. Vasquez's fact pattern, was provided in Section II of that same dissent:

> "The constitutional right that the Court has now discovered---a criminal defendant's right to insist that his attorney contest guilt with respect to all charged offenses---is like a rare plant that blooms every decade or so. Having made its first appearance today, the right is unlikely to figure in another case for many years to come. WHY IS THIS SO? (emphasis added) First, it is hard to see how the right could come into play in any case other than a capital case in which the jury must decide both guilt and punishment. In all other cases, guilt is almost always the only issue for the jury, and therefore admitting guilt of all charged offenses will achieve nothing. It is hard to imagine a situation in which a competent attorney might take that approach...Indeed, under such circumstances, the odds are that a rational defendant will plead guilty in exchange for a [lesser] sentence.

It appears that Mr. Vasquez's case is that "rare plant," and it didn't take a decade to bloom, but was nearly coincident with the McCoy decision; and it is hard to imagine why attorney O'Hara would admit guilt on the elements of a RICO conspiracy prosecution, and then still try to deny Mr. Vasquez's involvement in the substantive offenses.

And again it is argued that inquiring into prejudice is not legally necessary under this autonomy claim. It really comes down to the matter that makes it a case of first impression.

### b. A Matter of First Impression

Is conceding an element of the charged offense the same as conceding guilt in a RICO conspiracy offense? Mr. Vasquez argues that it is. And what this court determines to be the correct answer will determine if McCoy or Strickland controls. As demonstrated in Section III at 2. RICO and Conspiracy Law, it would never matter about arguing lack of intent once you concede that Mr. Vasquez was a) a member of the enterprise (and as past and possible future leader of the "clique"), and b) "so he gave [Vida Loca] the gun..." (supra at 1)

You cannot concede an element of the §1962(d) offense, or other vital factual matters, and expect to pursue the sole objective of an acquittal in a successful

manner. It is only maintaining innocence and creating reasonable doubt concerning the testimonial evidence that could be called a "strategy" under these facts.

Ask yourselves: why else did they go to trial? Why didn't Mr. Vasquez enter a plea? It was not just because the government is under no legal obligation to offer one; it is because Mr. Vasquez told attorney O'Hara that he is legally innocent of the charges---specifically, the murders--- and wouldn't plead guilty. That was the understanding in Mr. Vasquez's sole objective.

On the LEXIS Reporter available to Mr. Vasquez, there is not one single case in any circuit that addressed McCoy, conceding elements, and a RICO conspiracy. There is no precedent to govern Mr. Vasquez's McCoy claims. The only case that even involves RICO and McCoy is 2019 U.S. App. LEXIS 30690, In re Wheeler (6th Cir.) and it was resolved solely on the question of retroactive application of the McCoy decision. Let's examine the others.

Each of these cited cases found McCoy was truly inopposite because the attorneys only conceded elements, not "guilt". See 2020 U.S. Dist. LEXIS 60448, Christenson v United States (D.Az)(Multiple tax-related charges of 26 USC §7201, 7203, 7206(1)) citing 2019 US Dist LEXIS 127881, Crump v Halverson (D.Minn.)(§2254 petition, state charged first-degree assault of 15-month-old child); United States v Swanson, 843 F.2d 1070, 1075-76 (9th Cir 1991)(§2113(a)); United States v Bradford, 528 F.2d 899 (9th Cir. 1975)(bank robbery, statute no identified, presumably §2113(a)); See also 2023 U.S. Dist. LEXIS 76079, Schaffer v United States (D.New Jersey)(§2251(a), 2252(a) & (a)(5)(B)); 2022 U.S. Dist. LEXIS 195589, Burton v May (D.Del.)(multiple state drug charges); United States v Roof, 10 F.4th 314, 352-53(4th Cir. 2021) (multiple counts of §249(e)(1), 247(a)(2), 924(c) & (j); Lang v DeMora, 15 F.4th 63 (1st Cir. 2021)(state charges of murder and assault); and the Kellogg-Roe case (state charges of felonious sexual assault under 13)(issue of "silent defense"). Every case is inapposite of Mr. Vasquez's motion's premise.

The trial strategy was based on the objective of acquittal through creating

reasonable doubt by maintaining innocence. Period. You can't say the issue is about "strategic choices" of how to achieve the sole objective (as is the argument here) and say attorney O'Hara's conduct was correct when the objective was an acquittal; conceding elements of a RICO offense is incongruous with that objective.

To deny intent after conceding that the murder weapon was provided, as a trial strategy, would require that the strategy was to deny intent FOR ALL OF THE CO-CONSPIRATORS. Otherwise, this case is truly inapposite of all the cases that have been found to be inapposite of the McCoy holding. In other words, not one single court has addressed these facts under the McCoy framework. Not one. "Thus, when a client makes it plain that the objective of 'his defense' is to maintain innocence of the charged criminal acts and pursue an acquittal, his lawyer must abide by that objective and may not override it by conceding guilt." McCoy citing Weaver v Massachusetts, 137 S.Ct. 1899 (2017).

### c. Contemporaneous Objections

The court seemed to place much reliance on Mr. Vasquez's perceived "failure" to "object at any point in the proceedings." This led to the determination that McCoy is not controlling. However, the evidence on the trial record demonstrates that attorney O'Hara went all through pre-trial, trial, and well into the middle of a "45-minute closing argument" before he exposed his usurpation of Mr. Vasquez's autonomy.

What exactly was Mr. Vasquez to do? Was he to stand up during closing arguments, in the middle of the courtroom, and make "vociferous" or "loud" objections just to create contemporaneous trial record for the purposes of this appeal? No rational person would suggest an affirmative answer.

As it stands, the first chance to present an objection was the direct appeal, and Mr. Vasquez surely did so. This is also the evidence that any reliance on Florida v Nixon, 543 U.S. 175 (2004) is misplaced. In Nixon, "defense counsel had

several times explained to the defendant a proposed guilt-phase concession strategy, but the defendant was unresponsive." id at 186. Mr. Vasquez was never afforded the opportunity by attorney O'Hara to be "informed" and to either "consent" or "object." It follows then that Mr. Vasquez had no opportunity to "approve," "protest," and was also then not "unresponsive" or simply "remaining silent." Under the Occam principle, the simplest explanation is that attorney O'Hara made the decision without conference, approval, or consent of Mr. Vasquez.

### d. Evidentiary Hearing and Expanding the Record

The existing record is insufficient to support the court's conclusions regardless of the analytical framework. Pursuant to §2255(b), a district court "shall... grant a prompt [evidentiary] hearing" "[u]nless the motion or the files and records of the case conclusively show that the prisoner is entitled to no relief." DeCologero v United States, 802 F.3d 155 (1st Cir. 2015) When reviewing a district court's denial of an evidentiary hearing "we take the petitioner's allegations as true." Owens v United States, 483 F.3d 48, 57 (1st Cir. 2020) See 2019 U.S. App. LEXIS 38343, Rivera-Rodriguez v United States (1st Cir.) where the case was remanded back on an allegation that counsel "fail[ed] to advise the client" and "there is no contradictory evidence on the record." At a minimum, this case shall be remanded back for an evidentiary hearing as well.

### IV. SUMMATION

Mr. Vasquez believes it is quite clear that attorney O'Hara made a critical error. Admitting guilt is deficient, being found guilty is then prejudice because the evidence isn't actually "overwhelming." It is all derived from four persons with motive to lie for the benefit of a lesser sentence. And that is under Strickland. Under McCoy, attorney O'Hara violated Mr. Vasquez's rights by usurping the sole objective without conference, consent, or notice. It has been argued that under a

(16)

RICO conspiracy offense, conceding elements is conceding guilt. It is up for this court to decide whether this is a case of first impression on that issue and whether Mr. Vasquez is correct. A new trial is warranted.

## V. REQUESTED RELIEF

1) Declare that McCoy controls; and

2) Vacate conviction and remand back for new trial; or,

3) Remand back for an evidentiary hearing to determine what the sole objective was and also the understanding between Mr. Vasquez and attorney O'Hara; or,

4) Any and all other relief this court finds to be equitable based on this appeal.

Respectfully submitted this 25 day of June, 2024.

*Noe S. Perez Vasquez*
Noe Salvador Perez Vasquez
Appellant, pro se
Reg. #99445-038
USP Terre Haute
PO Box 33
Terre Haute, IN 47808

### Certificate of Mailing

I, Noe Salvador Perez Vasquez, the Appellant in this matter, pro se, hereby certify and declare that I placed this "Appellant's Brief" into the hands of prison officials, with full First Class U.S. Mail Postage Prepaid, to be mailed via institutional legal mail, on this 25 day of June, 2024.

*Noe S. Perez Vasquez*
Noe Salvador Perez Vasquez

Noe Salvador Perez Vasquez
#99445-038
U.S.P Terre Haute
P.O. Box 33
Terre Haute, IN 47808



Clerk of Court
John Joseph Moakley U.S Courthouse
One Courthouse Way, Suite #2500
Boston, MA 02210